Argued and submitted April 2, 2009, affirmed April 21, 2010

Robert McDOWELL,
*Plaintiff-Appellant,*

*v.*

ALLIED BUILDING PRODUCTS CORP.,
successor-in-interest to
Allied Building Products Corp.,
and on behalf of
Burkheimers, et al.,
*Defendants,*

*and*

DOMCO PRODUCTS TEXAS, L.P.,
a Delaware corporation,
fka Azrock Industries, Inc.,
successor-in-interest to Domco Products Texas L.P.,
on behalf of Domco U.S. Incorporated,
on behalf of Domco Inc. Floor Product (Texas),
on behalf of Uvalde Rock Asphalt Company;
Kentile Floors, Inc.,
a New York corporation,
successor-in-interest to Kentile Floors, Inc., on behalf of
David E. Kennedy, Inc.;
Wanke Panel Company,
an Oregon corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
040606718; A134348

230 P3d 552

Richard M. Grant, California, argued the cause for appellant. On the opening brief were Patrick Angel, J. Peter Jeffers, Delaney Miller, and Brayton Purcell, LLP. On the reply brief were Patrick Angel, Cameron O. Carter, and Brayton Purcell, LLP.

Thomas W. Brown and J. Michael Mattingly argued the cause for respondents. With them on the joint brief were Cosgrave Vergeer Kester LLP, and Rizzo Mattingly Bosworth PC, and R. Daniel Lindahl and Lindahl Law Firm, PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiff appeals a limited judgment, challenging the dismissal of his claims concerning alleged asbestos exposure against defendants as a sanction for his violation of a court order.[1] Among other things, plaintiff contends on appeal that, because he was unable to comply with the court's order, the trial court abused its discretion by dismissing his case. As amplified below, we affirm.

The material facts are procedural. Plaintiff filed his complaint in 2004, alleging claims concerning asbestos exposure against defendants. Two attorneys, Shadduck and Niebling, from the law firm representing plaintiff were involved in the various hearings that led to this appeal.

Plaintiff's case was one of several on the trial court's August 2006 asbestos docket. On August 21, the trial date for all cases on the August docket, the court held a hearing with the parties' attorneys to consider various pretrial matters, including scheduling issues and motions *in limine*. Among those motions were several that requested that the court conduct OEC 104 hearings outside the presence of the jury to determine the admissibility of expert testimony and other scientific evidence.[2]

During the August 21 hearing, two decisions were made that are pertinent to the issues raised on appeal. First, the court deferred ruling on the motions *in limine* until the trial in each case had actually begun. Second, the court and the parties agreed to the "48/24" rule—that is, the parties agreed to disclose the identity of each expert 48 hours before the expert testified and to provide opposing counsel with each expert's file 24 hours before the expert testified.

Three days later, on August 24, the court held another hearing concerning plaintiff's case. By that time, plaintiff's case was one of only two cases on the August docket

---

[1] In this opinion "defendants" refers to Domco Products Texas, L.P., Kentile Floors, Inc., and Wanke Panel Company, the only defendants that are parties to this appeal.

[2] OEC 104(1) provides, in part, that "[p]reliminary questions concerning the qualification of a person to be a witness * * * or the admissibility of evidence shall be determined by the court * * *."

that had not yet been resolved. Because the court was scheduled to be gone at the beginning of the following week and because the selection of a jury, for what was scheduled to be a lengthy trial, would likely be easier after Labor Day, the court set September 5 as the first day of trial.

In sum, as of August 24, the parties understood that plaintiff's case would proceed in the following manner: (1) Trial would begin on September 5—that is, the Tuesday after the Labor Day holiday. (2) The motions *in limine* would be decided when each expert was scheduled to testify—that is, *after* jury selection and opening statements. (3) The "48/24" rule would apply to the disclosure of expert names and files.

A week later, on August 31, the sequence of events that precipitated this appeal began. On the afternoon of August 31, at the request of the trial court, an attorney for one of the defendants sent an e-mail to the other attorneys in the case, including Niebling. That e-mail indicated that the trial court had scheduled a pretrial hearing for the next day—that is, September 1, the Friday before the Labor Day weekend—at 10:00 a.m. According to the e-mail, one purpose of the hearing was to "take up some *motions* in limine *prior to trial*." (Emphasis added.)

Because plaintiff's other attorney, Shadduck, had planned to be out of town from the afternoon of August 31 through the morning of September 1, Niebling appeared at the hearing. While addressing the motions *in limine*, the trial court noted that plaintiff's case had "striking similarities" to another case on the August asbestos docket and that "on [its] own motion" it was "reconsidering" and would "make an order concerning defendant's motions *in limine*."

Specifically, the court stated:

"I believe that there are serious issues here concerning causation that trigger a careful analysis of the Oregon Evidence Code and are requiring * * * Rule 104 hearing[s] *before we bring a jury in*."

(Emphasis added.) The court identified five motions *in limine* that it intended to address during the OEC 104 hearings

on the following Tuesday—that is, September 5—and reiterated:

> "On these motions, I'm going to start Tuesday off—your case is set at 9 o'clock. I'm going to conduct a Rule 104 hearing, which I expect to be extensive, and deal, among other things, with these scientific evidence issues on the matters that I've indicated."

In sum, contrary to the parties' understanding when they arrived at the hearing (and to the procedure the court had outlined as of August 24), the trial court had significantly changed course, ruling that the OEC 104 hearings concerning the pertinent motions *in limine* would occur *before the jury was selected* and not thereafter when each expert was scheduled to testify.

In the colloquy that followed, one defendant sought the names of plaintiff's experts so that defendants could prepare over the weekend for the Tuesday morning OEC 104 hearings. The trial court agreed. Niebling's primary response was that plaintiff would be "ready to go on Tuesday" according to the procedure that the court had outlined as of August 24. Significantly, however, he did not object to the trial court's rulings at the hearing concerning the exchange of expert names and files and the appearance of those experts on Tuesday morning. Instead, he provided the court with the names of some of plaintiff's experts and indicated that Shadduck would have additional information that afternoon. The court concluded by cautioning plaintiff:

> "So that's the sequence [in which the experts will be examined]. And plaintiff needs to have these people here and ready to go. Plaintiff is at risk, plaintiff—and I had to warn plaintiffs on [one of the other asbestos cases], if you don't have witnesses here and ready to go, you're at risk of the Court granting a motion to dismiss for failure of prosecution.
>
> "* * * * *
>
> "So I also expect everyone to exchange all of the other information and documents prior to trial that's supposed to be exchanged. And things are just going to go—you know, one step after another."

The court's ruling was embodied in an order that provided, in part:

> "IT IS HEREBY ORDERED THAT an OEC Rule 104 hearing will be conducted at 9:00 a.m. on September 5, 2006. *At this hearing, plaintiff will bear the burden to establish the admissibility and qualification of the experts listed below and each witness will state each of their opinions and the basis for those opinions.* In conjunction with this Order and the Court's previous Order regarding the disclosure of an expert's entire file twenty-four hours prior to offering testimony, *plaintiff must produce the entire files of the experts noted below by 5:00 p.m. today, September 1, 2006.*"

(Emphasis added.) The order specifically indicated that Ken Cohen was the first expert that would be subject to an OEC 104 hearing on September 5.

Shadduck returned to the office the afternoon of September 1. After speaking to Niebling about what had transpired—and, specifically about the court's order that plaintiff's experts appear for purposes of examination at the OEC 104 hearings on the morning of September 5—he delivered a letter to the trial court and defense counsel in which he implicitly asserted that the court's order was invalid because plaintiff would be unable to comply with it. Shadduck's letter named three of the four out-of-state expert witnesses that he intended to call and indicated that he had previously "scheduled [his] witnesses with firm commitments" to testify on September 7, 8, 11, and 12. Shadduck concluded by stating that

> "[t]hese are all of the expert witnesses I intend to call on behalf of the Plaintiff. * * * *I regret to inform the court that the witnesses you would like to conduct OEC 104 hearings on will not be available until their scheduled times I have designated above.* I would request that the court conduct a 104 hearing at the times the respective witnesses are scheduled to appear. We will prepare and submit declarations, to the extent possible, and bring them Tuesday."

(Emphasis added.) Plaintiff did not disclose the names of all of his experts and the experts' files by the court-ordered 5:00 p.m. deadline on September 1.

Thereafter, on Tuesday, September 5, the parties appeared at the time scheduled for the OEC 104 hearings. By that point, a defendant that is not a party to this appeal had moved to dismiss plaintiff's case for violation of the court's September 1 order or, alternatively, to impose other sanctions for plaintiff's discovery violations. All defendants joined in that motion, which stated, in part:

"Pursuant to ORCP 46 B(2)(b) [(concerning the court's authority to impose a sanction for violation of a discovery order)] and/or ORCP 54 B(1) [(concerning the court's authority to dismiss a case when plaintiff fails 'to prosecute or to comply with these rules or any order of court')], [defendants] move[ ] the Court for an order on the following: (1) dismissing this action based on Plaintiff's failure to provide witnesses to prove causation of Plaintiff's alleged injury for the OEC 104 hearings ordered by this Court on September 1, 2006; (2) the imposition of discovery sanctions for Plaintiff's violation of the Court's order entered herein on September 1, 2006, which order required Plaintiff to produce the entire file of each expert identified by him in open Court during the pre-trial hearing 24 hours before the OEC 104 hearing set for September 5, 200[6]; and (3) the exclusion of testimony by an unnamed Certified Industrial Hygienist and unnamed pathologist * * *.

"* * * * *

"Plaintiff has willfully violated an Order of the Court by refusing to identify his expert witnesses, refusing to produce [the] experts' files, and refusing to produce those named experts at a Court scheduled OEC 104 hearing. The court should sanction Plaintiff appropriately by excluding testimony of all Plaintiff's expert witnesses and, ultimately, dismissing this action as to all defendants."

As for plaintiff, Shadduck appeared at the hearing, but none of plaintiff's experts was present as ordered. Further, with one exception described in detail below, plaintiff did not submit any declarations from any of his identified expert witnesses, explaining the reasons for their non-appearance. Plaintiff's attorneys also did not submit declarations detailing their efforts between the time of the court's September 1 directive and the 9:00 a.m. hearing on September 5 to secure the attendance of the experts or to

obtain declarations from the experts substantiating valid reasons for their failure to attend as ordered.

The court began by addressing defendants' motion to dismiss plaintiff's case for failure to comply with the court's September 1 order. The following colloquy ensued:

"THE COURT: Okay. So we've had a number of statements and we have this motion for sanctions involving dismissing the case based on alleged violations of failing to identify expert witnesses, failing to produce files, refusal to produce expert witnesses for the [OEC] 104 hearings that I ordered to take place at 9 o'clock this morning.

*"And, Mr. Shadduck, based on what's been stated, I want to hear from you now entirely in terms of response to the arguments*, but it is my understanding * * * I did receive a letter from you and—

"MR. SHADDUCK: Yes.

"THE COURT: —and it is my understanding that essentially you're refusing to produce experts pursuant to my order of September 1. And it's now 10:07 a.m. on September 5th and you have no experts here, specifically the very first expert who we were to start with, Mr. Ken Cohen * * *. Is that—am I right that he's not here?

"MR. SHADDUCK: You are correct, Your Honor.

"THE COURT: And that you're refusing to follow my order; is that right?

"MR. SHADDUCK: I'm not refusing. These witnesses simply will not be here today on their own volition. We've contacted everybody except Mr. Richard Cohen, who was in court on Friday, as I understand it, in San Francisco.

"All three of these gentlemen, Mr. Ken Cohen, Richard Cohen, and Dr. Brodkin are all out-of-state witnesses. I have a declaration from [Dr.] Brodkin that he's in practice today in Seattle and he just simply will not fly here and be here today.[3] So how you use the term 'refuse' or I'd prefer to use the term—

---

[3] Specifically, Brodkin's declaration stated that (1) he had been contacted by plaintiff's law firm on September 1 "to find out [his] availability for a pre-trial hearing" on September 5; (2) he was out of town for the Labor Day weekend; (3) he was not available for a pretrial hearing on September 5 "due to [his] obligations to arrange office work" and "prepare medical records" for his clinic in Kirkland, Washington; and (4) he was currently scheduled to testify on September 11 and was "available for any pre-trial hearing the court deems appropriate on this date."

"THE COURT: Well, * * * the wording of your letter is—

"MR. SHADDUCK: —they're not able.

"[DEFENSE COUNSEL]: * * * your letter was quoted earlier and, 'I regret to inform the Court that the witnesses you would like to conduct an OEC 104 hearings on will not be available until their scheduled times that I have designated above.'

"MR. SHADDUCK: I apologize for the type of language, but * * * they are not available.

"THE COURT: And you—well, okay. *Do you have any argument?*

"MR. SHADDUCK: *No, I don't. If the Court wants to dismiss the case, I can't say anything further.*

"THE COURT: So, just so I understand, *you don't have any responses to * * * what's been set out and to * * * what are contended to be grounds for the sanction of dismissal at this time* for essentially failing to prosecute?

"MR. SHADDUCK: I—*I can't make wine out of water. I can't get these gentlemen here today, not on such short notice.* I apologize."

(Emphasis added.)

That colloquy demonstrates that the gravamen of plaintiff's position before the trial court was that he was not subject to any sanction for his noncompliance with the September 1 order because he was unable to comply with its terms. Significantly, plaintiff did not assert to the trial court that, to the extent that he was subject to some sanction for his noncompliance, the sanction of dismissal was inappropriate.

Ultimately, the court dismissed plaintiff's case for failure to comply with its September 1 order.[4] The court indicated that its decision to dismiss plaintiff's case was based on

---

As noted, Brodkin's declaration was the only one presented to the trial court at the hearing. Plaintiff did not present declarations from any of his other expert witnesses, explaining the reasons that they were unable to comply with the court's order to appear in court on September 5.

[4] We note that, although, in its ruling, the trial court spoke in terms of "failing to prosecute and failing to comply with discovery obligations," its dismissal was

several considerations, including the following: (1) After presiding over a related case on the August docket, the court had reason to believe that plaintiff would be unable to offer *prima facie* expert proof of causation. Consequently, given the very substantial burden and expense to the court and potential jurors of empanelling a jury in a complex product liability case,[5] it was appropriate to assess the admissibility of plaintiff's proof of causation before jury selection began. (2) Plaintiff made "no showing" as to why Ken Cohen, the witness who had been ordered to testify first on September 5, was unable to appear. (3) Plaintiff's noncompliance with the court's order substantially and impermissibly impaired the court's administration and management of its asbestos case docket.

When Shadduck then attempted to respond to the motion to dismiss, the court stated that it had made its ruling and that "the time to make a record is when the Court asks for oral argument."[6] Plaintiff ultimately appealed the trial court's limited judgment, dismissing his case against defendants with prejudice.

On appeal, plaintiff raises a single assignment of error:

> "*The Circuit Court erred in granting defendants' motion to dismiss* for failure to prosecute and failure to comply with discovery obligations when plaintiff's 'failures' were due to

fundamentally predicated on plaintiff's violation of the court's September 1 order, which required the disclosure of expert names and files and required the appearance of plaintiff's witnesses in court for OEC 104 hearings.

[5] The court noted that the projected duration of the trial in this case was "three weeks."

[6] The court told plaintiff that, to the extent that plaintiff sought relief from its dismissal of his case, plaintiff could "make whatever filing you want to make" but that the court had made its ruling. A couple of days after the hearing, plaintiff filed what he denominated as a response to defendants' motion to dismiss and a motion for a new trial under ORCP 64. Thereafter, in his reply to defendants' response, plaintiff also sought to set aside the dismissal pursuant to ORCP 71 C.

The court subsequently held a hearing concerning plaintiff's submissions. At that hearing, plaintiff's attorney did not assert that the court should revisit its oral ruling dismissing the case either because the content of plaintiff's submissions included declarations demonstrating his inability to comply with the court's order or because a sanction less onerous than dismissal was warranted. Rather, plaintiff's argument focused solely on the propriety of obtaining a new trial or ORCP 71 relief. Ultimately, the trial court denied plaintiff's requests, and the court's rulings in that regard are not assigned as error on appeal.

the court's improper, unexpected and impossible to meet order on the eve of trial and plaintiff was prepared and able to proceed with trial as previously scheduled."

(Capitalization omitted; emphasis added.) The scope of that assignment is limited to the propriety of dismissing plaintiff's case as a sanction for his failure to comply with the September 1 order. Plaintiff does not assign error to any other ruling, including those in the trial court's September 1 order. Indeed, in his reply brief, plaintiff expressly confirms that he "does not challenge these orders here."[7] *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule * * *."); ORAP 5.45(3) ("Each assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged.").

Specifically, we understand plaintiff's assignment of error to encompass two related contentions. First, plaintiff contends that, because he was unable to comply with the terms of the September 1 order, the trial court should have imposed *no* sanction for his noncompliance. Second, plaintiff contends that, to the extent that he was subject to some sanction for his noncompliance, the sanction of dismissal was inappropriate. Thus, according to plaintiff, the trial court abused its discretion in dismissing his case.

Defendants respond that plaintiff failed to preserve the issues raised on appeal. Further and alternatively, as to the merits, defendants contend that the trial court did not abuse its discretion in dismissing plaintiff's case.

---

[7] To be sure, at other points in the briefing, plaintiff suggests that dismissal based on noncompliance with the September 1 order was improper because the terms of that order were simply "unreasonable" and "plaintiff *could not comply*" with them and because "pretrial expert discovery is prohibited in Oregon." (Emphasis in original.) Those collateral attacks, even if somehow presented for our review, lack merit for two reasons. First, broadly construed, Shadduck's September 1 letter alerted the court that plaintiff could not comply with the order because his witnesses "will not be available until their [originally] scheduled times." Nonetheless, as late as the September 5 hearing, plaintiff did not demonstrate to the court, through declarations or otherwise, that those witnesses (specifically Ken Cohen) were unable to comply with the order or that plaintiff made reasonable efforts to secure their appearance and disclose their files. Second, the parties in this case had agreed to the "48/24" rule that required the pretrial expert discovery about which plaintiff now complains.

■   We begin with preservation. Whether a contention is preserved for review is guided by the principles described in *State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000). Consistently with those principles, we determine whether the trial court was sufficiently and specifically alerted to a particular error so that the court could "consider and correct the error immediately, if correction is warranted." *Id.* at 343.

■   Here, as previously described, plaintiff's sole contention before the trial court in opposing the motion to dismiss was that the trial court should not impose *any* sanction because he was, and had been, unable to comply with the terms of the September 1 order. *See* 235 Or App at 21. Conversely, before the trial court, plaintiff failed to raise his present, alternate appellate contention that, even if he was subject to some sanction for his violation of the September 1 order, because he had failed to demonstrate his inability to comply with that order, dismissal was an inappropriate sanction. Consequently, the former contention was preserved for our review, but the latter was not. *See Wyatt*, 331 Or at 343 (explaining that, where a party "does not deny at trial that it is subject to *some* sanction, its failure to object to the particular sanction imposed by the judge or, in the alternative, to argue for some other sanction, fails to preserve a claim on appeal that the judge erred in failing to consider the availability of a less onerous sanction" (footnote omitted; emphasis in original)).

■   We turn to the substance of plaintiff's preserved contention. That contention is based on the factual premise that plaintiff was unable to comply with the court's order. Accordingly, our analysis reduces to whether that factual premise exists in this case—that is, whether plaintiff demonstrated his inability to comply with the order.

As we have previously described, *see* 235 Or App at 20-21, at the September 5 hearing, the trial court repeatedly solicited plaintiff's response to defendants' request for dismissal. Plaintiff indicated, however, that he had no response—that is, plaintiff told the court that, "[i]f the Court wants to dismiss the case, I can't say anything further" and later remarked, "I can't make wine out of water. I can't get these

gentlemen here today, not on such short notice." At the hearing, plaintiff presented a single declaration to the trial court from Brodkin, one of his four experts. As the trial court indicated, Brodkin's declaration was insufficient because it did not explain why he was unable to arrange his schedule to comply with the court's order to appear in court. Specifically, the court noted that Brodkin

> "simply says that he has an obligation to arrange office work and prepare medical records in his clinic in Kirkland, Washington. It doesn't say anything about treating patients * * * those vague statements, there's question as to whether they arise to a level of good cause, given the prior court orders."

Further, as late as the September 5 hearing, plaintiff did not demonstrate to the court, through declarations or otherwise, that any of his other expert witnesses were unable to comply with the court's order or that plaintiff made reasonable efforts to secure his experts' appearances and disclose their files. Indeed, in ruling on defendants' motion to dismiss, the court noted that "[t]he plaintiff's first witness, based on my order, which is critical to these motions * * * deals with Mr. Ken Cohen, the expert, and * * * there's no showing why he cannot be present." Bluntly, plaintiff failed to prove the factual premise underlying his position—*viz.*, that he was unable to comply with the court's order. Accordingly, plaintiff's contention that no sanction was warranted fails.

In sum, plaintiff did not preserve the issue whether, to the extent that a sanction was warranted, dismissal was inappropriate. Further, plaintiff failed to demonstrate that, because he was unable to comply with the court's order, no sanction was warranted. Accordingly, the trial court did not err in dismissing plaintiff's case as a sanction.

Affirmed.